THE PEOPLE *ex rel.* William D. Heise, State's Attorney,

*v.*

GEORGE H. MUNROE *et al.*

*Opinion filed June 19, 1907.*

1. DRAINAGE—*when file-mark on petition does not show want of jurisdiction.* That the certificate of filing a petition to organize a drainage district is signed by a certain person as "county clerk" does not show that the county court was without jurisdiction, in that the petition is required to be filed in the county court, where there is an order of the court in the record expressly finding that the petition was filed in the county court on the day it was filed with the county clerk. (*McChesney* v. *People,* 174 Ill. 46, distinguished.)

2. SAME—*notices signed by clerk of county court as "county clerk" are good.* While, under section 3 of the Levee act, the notices of the filing of a petition to organize a drainage district should be signed by the clerk of the county court, yet a notice signed by the person who is, in fact, clerk of the county court is not vitiated because he styles himself "county clerk," since parties are bound to take notice of the fact that the county clerk is the clerk of the county court.

3. SAME—*clerk may fix return day without reference to first day of term.* The clerk of the county court may, in the notice of the filing of a petition to organize a drainage district under the Levee act, fix the return day upon any day of a term of the county court which is far enough in the future to permit of the statutory notice being given, without reference to whether the day so fixed is the first day of the term or whether it has otherwise been designated as the return day.

4. SAME—*finding of court that petition has sufficient signers is conclusive.* A finding by the county court, from the evidence submitted, that a petition to organize a drainage district under the Levee act was duly signed by a majority of the owners, who represented at least one-third in area of the lands to be affected by the formation of the district, is conclusive in a *quo warranto* proceeding to test the legality of the organization of the district, where the plea shows the court had jurisdiction of the subject matter and of the parties.

5. SAME—*what averments sufficiently show that district was organized for sanitary purposes.* Averments in a petition to organize a drainage district under the Levee act that it is proposed to construct and maintain channels wherever the same are necessary

"for drainage and sanitary purposes as well as protection from overflow," and that the proposed drainage will "greatly improve the condition and situation in the district" by lessening the menace to health consequent upon overflow and by relieving the lands from floods, are sufficient to give the court jurisdiction, on the theory that the district is to be formed for sanitary purposes.

6. SAME—*what defects in petition do not go to jurisdiction of court.* An objection that a petition to organize a drainage district under the Levee act contains no particular or general description of the drains and ditches nor any express averment that the proposed work was to be combined with work theretofore constructed, the allegation of the petition being that the purpose is to construct a combined system of drainage, independent of levees, which shall include the improvement of *present* channels, waterways and ditches, does not go to the jurisdiction of the court.

7. SAME—*Levee act is not unconstitutional in its entirety.* The unconstitutionality of provisions of the Levee act for the assessment of damages to land owners does not affect the remainder of the act, and districts may be organized thereunder and proceed under the Eminent Domain act to acquire the right of way for their drains and ditches and to fix the land owners' compensation and damages.

8. PLEADING—*general demurrer will not be carried back to defects of form.* A general demurrer to replications to a plea to an information in the nature of *quo warranto* will not be carried back to defects in the plea which are defects of form only, and which should be taken advantage of by special demurrer.

APPEAL from the Circuit Court of Will county; the Hon. A. O. MARSHALL, Judge, presiding.

WILLIAM D. HEISE, State's Attorney, (EDWARD CORLETT, and GEORGE J. CLARE, of counsel,) for appellant.

S. J. DREW, and J. W. DOWNEY, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The State's attorney of Will county filed an information in the nature of a *quo warranto* in the circuit court of that county against appellees to test the organization of a drainage district bearing the name of "The Spring Creek Drainage District," purporting to have been organized under the

Levee act. The information contains two counts. The first is in the ordinary form, charging that the appellees, for the pretended body corporate, have without lawful authority exercised the franchise of a drainage district. The second count differs from the first in that it sets out a description of the territory within the pretended district and shows that a portion of the territory is within the city limits of the city of Joliet. Appellees filed two pleas. The first, after being several times amended, sets out in detail the steps taken in organizing the district. To the second plea a demurrer was interposed and sustained, and the only plea hereinafter referred to is the first plea as finally amended. Appellant obtained leave to reply double, and filed eight replications. Appellees demurred generally to all the replications and the demurrer was sustained. The appellant elected to abide its replications. Final judgment was entered against it, and thereupon it appealed to this court.

The propositions discussed by appellant, so far as they arise upon consideration of the replications, will be disposed of by us without regard to which particular replication avers the facts considered.

Section 2 of chapter 42, Hurd's Revised Statutes of 1905, provides that the petition for the organization of the district may be filed "in the county court." The following section contains this language: "Such petition being filed the clerk of said county court shall cause three (3) weeks' notice of the presentation and filing of such petition to be given." It is then provided that the notice shall be by posting and by publishing in a newspaper and that copies shall be mailed to non-residents.

It appears that the petition herein was filed on January 17, 1903, and the certificate of filing was signed "Alfred E. Mottinger, Co. Clerk Will Co., Ill.;" that the notices given were signed "Alfred E. Mottinger, County Clerk," and fixed March 20, 1903, which was one of the days of the February law term of the county court of Will county

for the year 1903; that an order purporting to find all the jurisdictional facts was entered on the last mentioned date, practically all the land owners being defaulted, and that the order organizing the district was entered on October 26, 1903. It is contended that the county court was without jurisdiction to organize the district because the petition did not appear, by its file-mark, to have been filed in the county court, and because the notice given was signed by Mottinger in his capacity as county clerk and not as clerk of the county court.

Appellant relies principally upon the case of *McChesney* v. *People*, 174 Ill. 46. It was there held that section 186 of the Revenue act, which required a certain document to be filed as part of the records of the county court, was not satisfied by showing that instrument, bearing thereon, after the date of the filing, the signature of the clerk, followed by the words "County Clerk," for the reason that the records in the office of the county clerk, which are kept by that officer in his capacity as county clerk, are not the records of the county court. In that case there was nothing whatever to show that the instrument had been filed in the county court. Here, the order of March 20, 1903, expressly finds that the petition was filed in the county court on the 17th day of January, 1903. That finding is not necessarily inconsistent with the file-mark, as the petition, even after receiving that file-mark, may have been on the same day filed or deposited in the county court. We have frequently held "that the finding by the court of due service of process will not be rebutted by a defective service of process to the return term where there has been a continuance to a subsequent term, but in support of such presumption [finding] we would presume that an *alias* summons to the subsequent term had been taken out and duly served, although such an *alias* writ might not appear upon the files." (*Dickison* v. *Dickison*, 124 Ill. 483.) Following the reasoning which led to that conclusion, we think the original file-mark on

the petition, in view of the finding of the court that the petition had been filed as required by statute, does not warrant us in holding that the court had no jurisdiction.

We think, from the language of the statute, that the notice should be signed by the clerk of the county court. As the same person acts in the dual capacity of county clerk and clerk of the county court, a notice signed by the county clerk is necessarily a notice signed by the clerk of the county court, and it is not vitiated by the fact that he attaches to his signature the words "County clerk" when he should attach the words "Clerk of the county court." Parties are bound to take notice of the fact that the county clerk is clerk of the county court.

The notice was made returnable on March 20, 1903, which was not the first day of any term of the county court, and was not a day which had been fixed or designated in any manner as a return day for any term of that court, and it is urged that by analogy to the common law the notice was for this reason fatally defective. The statute merely provides that upon the petition being filed the clerk "shall cause three (3) weeks' notice of the presentation and filing of such petition to be given." We think the legislative purpose was to fix the return day with reference to the date of filing the petition, and that the clerk might properly make the writ returnable on any day which was far enough in the future to permit the statutory notice to be given prior thereto.

It is also averred that the petition was not signed by a majority of the land owners, and that it was not signed by land owners who represented one-third in area of the lands included within the district, as required by section 2, *supra,* and that the names purporting to be signed to the petition for organization of the supposed district were not, in fact, signed to such petition by the property owners. The order of March 20, 1903, finds, from evidence submitted, that the petition was duly signed by a majority of the owners who

represented at least one-third in area of the lands to be affected by the formation of the district. As it appears from the plea that the court had jurisdiction of the parties and of the subject matter, we think the finding of the court just mentioned is conclusive and binding upon the parties in this suit. If the evidence which the court heard did not warrant this finding the remedy is not by this proceeding. *People* v. *Waite*, 213 Ill. 421.

It is then argued that the petition does not state that the proposed work was either necessary or designed for agricultural, sanitary or mining purposes, as section 2, *supra,* contemplates it should do. The petition states that it is the purpose to construct and maintain channels, etc., wherever the same are necessary for "drainage and sanitary purposes as well as protection from overflow," and that the proposed drainage will benefit all the lands within the contemplated boundaries and "greatly improve the condition and situation in said district" by lessening the menace to health consequent upon the overflow of said stream and by relieving the lands from floods. We think it apparent that these averments were sufficient to give the court jurisdiction on the theory that the formation of the district was for sanitary purposes.

Section 2, *supra,* provides that the petition shall contain "a description of proposed starting points, route and terminus of the work, * * * and if the purpose of said owners is the repair and maintenance of a ditch or ditches, levee or levees, or other work, heretofore constructed under any law of this State, said petition shall give a general description of the same. * * * *Provided,* that in case the proposed work shall consist of a combined system of drainage independent of levees, no description of such drains and ditches in the petition shall be required." The petition states that the purpose is to establish and maintain a combined system of drainage and protection from overflow, independent of levees, which shall include the improvement

227—39

of present channels, waterways and ditches, wherever the same are necessary, and does not contain any description of the starting points, route and termini of the work, nor any general description of any ditch or levee theretofore constructed under any law of this State, which petitioners proposed to repair and maintain, and it is objected that in the absence of any such allegations the petition should have contained a positive averment, in apt language, "that there was work theretofore constructed with which the proposed work was to be combined," the reasoning being that the statement that the purpose was to construct and maintain a combined system of drainage which should include the improvement of present channels, etc., was not an averment that such channels or other work had been theretofore constructed within the district, and in the absence of an averment that they had been so constructed the petition did not state facts sufficient to show that the proposed work was to be a combined system of drainage, within the meaning of the statute.

The question whether a similar defect would deprive the court of jurisdiction was determined in *People ex rel.* v. *Lingle,* 165 Ill. 65. At the time that case arose the statute in reference to local improvements within a city provided that when such an improvement was to be made, wholly or in part, by special assessment, the city council should pass an ordinance to that effect, "specifying therein the nature, character, locality and description of such improvement," (Hurd's Stat. 1895, chap. 24, sec. 134,) and that the petition filed in the county court should "recite the ordinance for the proposed improvement." (Sec. 137, chap. 24, *supra.*) It was objected in the case just referred to, on an application for judgment and order for sale for delinquent special assessments, that the ordinance did not contain a sufficient description of the nature, character and locality of the improvement. This court held that this objection was not one which went to the jurisdiction of the court, and for

that reason could not be entertained on an application for a judgment and order of sale. We think it follows that the defect last above pointed out in the petition now before us is not one which affected the jurisdiction of the court.

It is then contended that the territory within the city of Joliet which is included within the boundaries of this district could not lawfully be so included. Upon the facts as they here appear by replication this question has been determined adversely to appellant by this court in the case of *City of Joliet* v. *Spring Creek Drainage District*, 222 Ill. 441.

It is then urged that even if the demurrer to the replications was properly sustained, the plea was bad and the demurrer should have been carried back and sustained thereto. Prior to the final determination by the court of the question whether a drainage district should be organized, the commissioners are required to determine whether the costs, expenses and damages necessitated by the proposed work will be greater than the benefits; if yea, the proceedings shall be dismissed at the costs of petitioners; if nay, further proceedings shall be had, which may result in the organization of the district. (Hurd's Stat. 1905, chap. 42, secs. 9-11, p. 788.) The plea avers that the commissioners made their report to the county court on September 18, 1903, and that thereafter, on October 26, 1903, the county court entered an order organizing the district. The plea does not set out the verbiage of that report or state its substance in any language appropriate to common law pleading, from which we can determine whether it was such a report as would necessitate a dismissal or whether it was such a report as would authorize further proceedings. The order of October 26, 1903, which is set out *in hæc verba* in the plea, states, however, "that the benefits to be derived by the construction of said work will far exceed the cost of construction of the same, as shown by said report," referring to the report in question. The court could not have

proceeded after that report was made except the finding contained therein had been of the nature shown by the words of the order. The conclusion from the language last above quoted is, that the report of the commissioners was to the effect that the costs and expenses would not exceed the benefits. (*People* v. *Gary*, 196 Ill. 310.) We regard this defect in the plea as one of form, only, and therefore not obnoxious to a general demurrer. Had appellant desired to avail itself of this fault in the pleading it should have done so by special demurrer.

Appellant challenges the constitutionality of the entire Levee act on the ground that the provisions of the act for the assessment of damages to land owners being unconstitutional and void, (*Wabash Railroad Co.* v. *Drainage District*, 194 Ill. 310; *Juvinall* v. *Drainage District*, 204 id. 106;) the portion of the act which remains is not complete in itself and is incapable of being executed in accordance with the legislative intent, wherefore the demurrer should have been carried back and sustained to the plea. We do not consider this question an open one. Since the parts of this statute providing for the assessment of damages were held to be unconstitutional by this court many cases have been considered by us involving other provisions of the act, which we have treated as valid and enforceable. We have, since the decision of *Wabash Railroad Co.* v. *Drainage District, supra,* held that a drainage district may proceed under the Eminent Domain law to condemn the right of way for its ditches, to assess the compensation to the land owner for land taken and fix the amount of damages to land damaged but not taken. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Drainage District*, 213 Ill. 83; *Hutchins* v. *Drainage District*, 217 id. 561; *City of Joliet* v. *Spring Creek Drainage District*, 222 id. 441.) It is apparent from these decisions that the court did not regard the entire act as invalid by reason of the fact that the provisions of the act for the assessment of damages to land

owners were unconstitutional, and we think that the validity of the remainder of the act must now be regarded as not affected by the unconstitutionality of the portions thereof providing for the assessment of damages to land owners. *Hill* v. *Tohill*, 225 Ill. 384.

We conclude that the errors assigned by appellant are without substantial merit, and the judgment of the circuit court will therefore be affirmed.     *Judgment affirmed.*